Good morning, Your Honors. May it please the Court, my name is Haley Reynolds, Student Counsel for Petitioner, Mr. Joel Soto-Rodriguez. I'm joined this morning by fellow Student Counsel Daniel Zarchi and our supervising attorneys, Gary Watt and Steven Talafield. I hope to reserve three minutes of my time for rebuttal. Okay, are you splitting argument with your co-counsel or is it just you? Just me, Your Honor. Okay. The Washington Witness Tampering Statute does not match categorically the federal definition of a crime involving moral turpitude because not every conviction requires evil intent or conduct that is so base, vile, and depraved as to shock the public conscious. Just like in Robles-Urrea v. Holder, where this Court found that the federal definition of misprision of a felony is not a crime involving moral turpitude, the statute here does not involve physical harm, it does not involve fraud, and it does not involve a specific intent to obstruct justice. Turning to the first step of the categorical approach under Taylor, Taylor instructs us to look at the elements, and under this Court's recent decision in Rindon, an element is only that which a jury unanimously finds on. And here, the element of scienter that is required for proof of conviction is just knowledge. That is, knowledge that the defendant knew the person that he or she contacted was a witness or may be a witness. This is exactly what the State v. Stroh decision, the Washington Supreme Court decision, instructs, that knowledge is all that is required for conviction and that there is no specific intent to obstruct justice. Looking to Robles-Urrea v. Holder, this Court began its analysis by looking to the definition of obstruction of justice from the BIA and an aggravated felony context, specifically looking to Espinosa-Gonzalez. And under that definition, in order for a crime to be considered an obstruction of justice crime, it must have a specific intent to obstruct justice. Just like in the Robles decision, here, there is no specific intent to obstruct justice, and without that intent, there is no evil intent. Give me, under this, I've got the statute here in front of me, give me something, some violate the statute that would not be obstruction of justice. Is there any such behavior? Yes, Your Honor. Okay. What would it be? Well, this Court can look to the State decision in State v. Blankenship. In that case, Mr. Blankenship, as he was being arrested, yelled, don't say anything. And he yelled that to the young woman who was present as he was being arrested. Mr. Blankenship was later charged and convicted with witness tampering, but was not convicted for the underlying charge of assault. That behavior, there's a, specifically it's not obstruction of justice because looking to this Court's definition and the BIA's definition of obstruction of justice, there's no specific intent to obstruct justice as found by a jury for purposes of conviction. Is that not obstruction of justice if he says don't say anything, what the witness would have said would have inculpated him? Your Honor, while divorcing from the BIA's definition, it does seem to obstruct justice. However, the BIA has stated that every crime that has its tendency to obstruct justice does not rise to the level of obstruction of justice. And this Court also recognized that in misprision of a felony, which is the statute at issue in Robles-Urrea, in that statute the defendant is required to know about a felony, know that another person had committed a felony, and then take the affirmative act of concealment. That, just like asking someone not to say anything, would naturally have its tendency to obstruct justice. Would it violate the statute if someone is charged with a crime, one of the witnesses against him is going to testify falsely, and he seeks to persuade that person not to testify? Would that violate the statute? Yes, Your Honor. And that's exactly what Mr. Soto-Rodriguez presented to the immigration judge. And under Duenas-Alvarez, this Court can look to the facts of petitioner's underlying case and see that he did believe his former co-defendant was going to testify falsely. He had learned through, there had been some retaliation from the co-defendant, and he had learned that he had planned to lie on the stand. And he wrote a letter asking him to tell the truth. That is sufficient for a conviction. Here, he had the knowledge that the former co-defendant would be called as a witness. And I guess this is a question for the government. So listen up, government. How is it obstruction of justice when someone says, tell the truth? Your Honor, I would argue it's not. And specifically, even if it does result in the concealment of information, that is not sufficient for a finding of obstruction of justice, as this crime of the century not being uncovered. However, that doesn't mean that it's a crime involving moral turpitude. It must be the specific intent to obstruct justice that is present in the statute that a jury unanimously finds in every conviction for this to be a categorical match to the Federal definition of a crime involving moral turpitude. Now, under the Supreme Court's categorical jurisprudence, it says that a reading of the statute that is permissible linguistically is not necessarily an available reading unless there's some realistic showing that this is how the statute would be applied. Do we have the evidence that the statute would be applied to people who say to a witness who's about to testify falsely, tell the truth? Or are we just making that up out of thin air? Well, Your Honor, that evidence does come from the testimony at the IJ hearing. The IJ did find Mr. Soto-Rodriguez credible. Admittedly, there's no published or unpublished case describing similar facts. There are the facts from State v. Blankenship where he simply yells three words, don't say anything, and that was sufficient for a conviction. There is actually a — That one doesn't sound as though he's saying, tell the truth. He's saying, don't tell him, don't say anything, fearful that if the witness says something, he's in trouble. Yes, Your Honor. There is one case that's currently on appeal in Washington, which we defendant asked someone to tell the truth. And in the case at the trial court level, the prosecutor put forth to the jury that the words, the truth, were code for another story that they had previously discussed. However, that is currently on appeal in the Washington State court. But it does show what a prosecution would be able to do even if someone did say, I asked him to tell the truth, the prosecution can simply present that the evidence is a lie, according to what the defendant says. Can you argue one way or the other on the question as to whether this is a divisible statute? Yes, Your Honor. As this court requested briefing on Rendon, this is not a divisible statute under Rendon. Rendon requires that a divisible statute have separate elements, that these subdivisions describe elements, and that elements are something that a jury is required to unanimously find on. And here, looking to both the jury instructions and Washington court's case law, specifically in State v. Witherspoon, a jury is not required to find unanimously on each subsection that is presented. These subsections are described as means, and they are can, more than one subsection can be presented to the jury as different theories. But there's no way, based on the jury instructions or the findings, to know if twelve jurors all agreed that it was subsection A. Do you have any reason to think, or perhaps you know, that it's the custom in the courts of Washington to charge all three subsections of the statute in every case, in the conjunctive? Your Honor, I don't know if it's necessarily the custom for all three. There are certainly, for instance, in State v. Witherspoon, two were presented. In State v. Loeb, all three were presented. And in our case, although we don't have the jury instructions, the record on page, I believe, 667, shows the information that was charged, and in the information, it does list all three elements were charged on Mr. Sotorodriguez. So that's supportive of your argument, that it's not divisible? Yes, Your Honor. That these are means rather than elements? Exactly, Your Honor. And so therefore, because these are actually means and not elements, that means that this is not a divisible statute, so there's no need to remand for a modified categorical approach. And you argue that a remand wouldn't be appropriate in any event, correct? Exactly, Your Honor, because it is the government's burden of proof to present a sufficient record of conviction to make a determination as to which subsection Mr. Sotorodriguez was convicted under. And here, the only evidence we have is what was charged, which lists all three subsections, and the jury verdict form, which lists 9A.72.120, subsection 1, but does not list A, B, or C. So here, even trying to do modified categorical, if it were divisible, it would be inconclusive. And just by one more way of comparison, looking to this Court's case law outside of a fraudulent context, when looking to what is base, vile, and depraved, this Court has never stated that a crime that does not involve physical harm can be sufficient to meet that standard of base, vile, and depraved. The closest maybe it has come is in Marmolejo Campos, but even there, this Court recognized, when analyzing the aggravated Arizona DUI statute, that a DUI brings with it inherent dangers, and then went on to analyze the type of intent that was present and found that it was sufficient intent for a finding of evil intent. And here, again, there is no physical harm involved in this statute, so it does not rise to the level of conscious, shocking behavior that this Court has found in prior crime-involving moral turpitude cases. And if there are no further questions at this time, I'll remain submissive. Let's hear from the government, and then you have saved some time. Thank you. May it please the Court. My name is Ashley Martin, and I represent the Attorney General in this matter. I'd like to begin by addressing Your Honor's question as to whether or not it's possible for an offender to violate this statute by instructing someone to simply tell the truth if called to testify. And by the very language of the statute, that's not possible. The statute criminalizes the behavior of inducing or attempting to induce a witness or someone the offender reasonably believes will be called as a witness to testify falsely. Yes. Read on. Read on. Yes. Or to But what comes after testify falsely? Or to withhold testimony without a right or privilege to do so? Correct. Or to absent himself No, no. Stop right there. So you can violate the statute by inducing someone without a privilege to so reduce to withhold testimony, to withhold any testimony, even to withhold, I assume, false testimony. That is to say, testify falsely is one thing, or get somebody to withhold any testimony. That is to say, what if the testimony is going to be false? Well, Your Honor, I think that under that hypothetical, we are in the world of Duenes Alvarez, where it's incumbent upon the offender to point to actual cases showing a realistic probability that the State actually applies the criminal law in that manner. So here, it's incumbent upon the Petitioner to show that that, that the State actually applies the statute where the offender counseled someone to withhold false testimony. And I'm aware that the Petitioner is arguing today that perhaps that's what he did in this case. Not perhaps. But, but the, but He absolutely insists that that's what he did. He claimed before the immigration judge that that's what he did. But that And the immigration judge found him credible. Your Honor Without condition. On that point, okay. On a close reading of the immigration judge's decision, if you look at page 9 of the immigration judge's decision, he characterizes the Petitioner's assertion that he counseled a, I believe it was a co-defendant to testify truthfully. The immigration judge characterized that as a claim. And then moving on to the credibility portion of the immigration judge's analysis, the immigration judge was clear that he was assessing credibility in the context of the applications for withholding of removal, convention under the, excuse me, protection under the convention against torture, and cancellation of removal. So I respectfully disagree with the assertion that the immigration judge found the Petitioner credible when he made the claim that he merely counseled a co-defendant to testify truthfully. And other than the fact that you don't believe the Petitioner, is there anything in the record to support your assertion that the immigration judge parsed it that way? Your Honor, my evidence is the immigration judge's decision itself. Fair enough. I do respectfully submit that there is nothing in the record to support the Petitioner's assertion before the immigration judge or before this Court that under the facts of his case, he merely counseled a co-defendant to testify truthfully. Am I misreading the record? I'm looking at page 13. The Court finds Respondent provided consistent, forthright, and candid testimony and finds him credible. Your Honor, if you'll oblige me, I'll grab the record from the table. You can probably take her word that she read it correctly. No. So, Your Honor, I agree with you that as to the applications for relief, and this is page 12 of the immigration judge's decision, that the immigration judge found that the Petitioner was credible and forthright. I am to support. So how does that not speak to Judge Davis's question? There's a credibility finding there. There was a credibility finding, and the government is arguing that that credibility finding was relevant to the applications for relief from removal. If you look at page 9 of the immigration judge's decision, the immigration judge notes that there was a claim by the Petitioner that he merely counseled a co-defendant to testify truthfully. Right. And two pages later, he finds him credible. I'm not trying to be sneaky. It just seems to me that that's the obvious reading. I understand, and it's a good question. I think that the immigration judge was making the credibility finding only as to the applications for relief. Well, but, you know, I don't know how much immigration law you do, but the rule is that in the absence of an adverse credibility finding, we conclude that the IJ found him credible. And there's nothing here that suggests any adverse credibility finding. Quite the contrary. We have a very explicit credibility finding. So I think you're unable to say that the credibility finding doesn't extend to  an adverse credibility finding. It's credible. So you're stuck. Well, respectfully, Your Honor, I disagree with that statement. I think the law when you say you disagree with that statement. No, Your Honor. You're correct that unless there is an adverse credibility finding, a Petitioner is presumed to be credible. The government's argument is that the agency approached this in sort of a bifurcated manner. As to the question of whether or not this was a crime involving moral turpitude, the agency properly treated that as a purely legal question, to which the facts were irrelevant. In fact, the facts were not before the agency based on the record of conviction from the Washington court. And the agency simply did what it was supposed to do and compared the elements of the State statute with the Federal generic definition of a crime involving moral turpitude. Do we owe any deference to the agency's construction of the State statute? No, Your Honor. No. Not as to the construction of the State statute, but as to the interpretation of crime involving moral turpitude. Yes. Then deference is due under Skidmore. Right. But we get to read the State statute entirely on our own. That is to say, what the agency might have thought the State statute means does not have any influence on us. Your Honor, you are correct. This Court does not owe deference to the agency's interpretation of the State statute. However, the State itself and the State supreme court is an authority on the meaning of the State criminal statute. And here we have very helpful decisions from the Washington supreme court and appellate courts as to what this statute actually criminalizes, most notably in Stroh. The Washington supreme court said, look, you can't violate the statute and simultaneously be innocent of the intent to obstruct justice. The very doing of these acts has as their natural object and tendency to impair proceedings before a court or an official investigation. Kagan, could you circle back to Judge Davis's question and just suppose that we read this record as the I.J. making a favorable credibility determination, and this individual's position is that he told a witness to testify truthfully. What happens then? Well, Your Honor, my issue with that is that if the Petitioner truly intended to point to the facts of his own case as showing a realistic probability that the State statute applies to non-terpitudinous conduct, he should have done that in his brief before the Board, but he did not. Instead, he applied what was essentially the categorical approach and argued that simply based on the elements of the State statute, this is not a crime involving moral turpitude. Had he pointed to his own case, he wouldn't have needed more than that to show a realistic possibility, would he? If he were able to credibly show that truly the facts of his own case were such that he counseled a co-defendant to testify truthfully, then, yes, I believe under Duenes-Alvarez, he would have met the burden. I think that's correct reading of our precedent as well. And so your argument really isn't contesting that. I think what you're arguing is it's too late for him to raise the argument. Is that right? That, yes. My first response to that is exhaustion. He was required to identify the facts of his own case as showing that realistic probability when he was before the Board, and he failed to do that. And as we've already discussed, I do respectfully disagree that the immigration judge credited the Petitioner's claim. We got that part. Correct. We might have to agree to disagree about that. But that's why I was trying to get you to circle back to Judge Davis's question. Yes, Your Honor. If the I.J. didn't refer to it as a claim, what other word would a legally trained person use? Contention? Assertion? I'm not sure I understand the weight you're placing on the use of the word claim. My focus on the use of the word claim is a collection of facts giving rise to a evasion. I don't understand. Well, my focus on the word claim is that it indicates the immigration judge is sort of not necessarily accepting it as fact. I mean, a judge can find that you made a claim that was not supported by the evidence. I mean, he made a, he made an assertion in court, but he didn't, there wasn't necessarily any evidence to support that. Well, the evidence was his assertion, his testimony under oath, which the I.J. found wholly credible. And again, I suppose that the government respectfully disagrees with Your Honors that the immigration judge credited that claim. And I think rightly so. That testimony? There was some brief testimony from the petitioner about his conviction for witness tampering. And I believe it appears in the record at, let's see, between pages 178 and 198. It's much more common for the government to be arguing to us that we need to give more deference to an I.J.'s credibility finding than the contrary. I understand that, Your Honor. But this is sort of a schizophrenic experience for me. Oh, I apologize if that's my fault. Why isn't the limited testimony regarding the claim sufficient to avoid forfeiture  I apologize. I'm not sure I understand. In other words, you're arguing that this contention, that the petitioner's own case shows that categorically this Washington statute doesn't cover the field. And yet, that's exactly the claim he made before the I.J., isn't it? No. No, Your Honor. I disagree that he raised that before the Board. Well, he didn't use those words that perhaps we would have preferred, you would have preferred, you would insist is important. But isn't that exactly what he presented? He argued that based on the elements of the State statute as compared to the Federal generic definition, this is not a crime involving moral turpitude. He approached it as a legal question, just as the agency did. And there was nothing in the brief where he pointed to the facts of his I'm talking about his testimony before the I.J. I was urging truthfulness. I wasn't obstructing justice. I wasn't even witness tampering. I was urging truthful testimony. Right. But any prosecutor would do. And, again, Your Honors, I disagree that the immigration judge credited that testimony by the Petitioner. Let me circle back to Duenas-Alvarez, which I think is a real issue in this case. Is it fanciful to imagine that we might get prosecutions for witness tampering when someone subject to criminal charge tells a witness directly or indirectly quote, tell the truth? Those of us who've been around hearing cases for a while know that there is a sort of generic problem with jailhouse snitches. Jailhouse snitches often lie. And the defendant, I think, has an interest in getting the jailhouse snitch to tell the truth, which is not what the jailhouse snitch is about to say. And I do think it would be a crime and maybe prosecuted under Washington law if someone who's subject to criminal prosecution in Washington State manages to get an inducement to the jailhouse snitch that says, testify truthfully. I know you're going to lie. And I don't think it's fanciful that a defendant would want to say that to the snitch, nor do I think it fanciful that the State would want to prosecute the defendant for witness tampering under this statute. And I don't think that it's going to be relevant under the statute whether or not he did it and did a criminal act to know whether the jailhouse snitch was or was not going to tell the truth. Well, Your Honor, the government's response to that is that Stroh rules that out, because Stroh holds that no one can violate the witness tampering statute without the intent to obstruct justice. But I don't think obstruct justice there is defined by trying to figure out whether or not the witness, the snitch, was going to tell the truth. I think all you need to show is that someone was trying to keep the snitch from testifying the way the snitch wanted to testify, or maybe the way the prosecutor wanted the snitch to testify. Well, Your Honor, I'm unaware of any cases where a defendant was convicted under that set of facts. Respectfully, I reviewed over 100 State cases in preparing for this argument, and I did not see a single one where a defendant was convicted under this statute for asking someone to withhold false testimony or to testify truthfully or to simply ascertain whether or not the witness will or will not tell the truth if called. I see that I'm out of time. That could be because the false testimony by the snitch was effective, and the defendant got convicted of the underlying charge. Anyway, thanks. I see that I'm out of time. Thank you for your argument. Ms. Bartlett, I think we've had the pleasure of each other's company back in my other court. Is that right? No. No, Your Honor, I don't believe so. You haven't appeared before the Fourth Circuit? No, sir. Okay. I have not. All right. Not in person, only in brief. Only not in person. All right. Thank you. Your Honors, to return to the testimony in front of the IJ, ignoring the fairly tortured reading from the government, it is a credibility finding. And furthermore, Mr. Soto-Rodriguez testified at the IJ without counsel, and if the government had a problem with how he presented his case, it's their burden to present the record of conviction to suggest that there's some problem with his testimony. And to Judge Fletcher's point, it is exactly what happened in this case, that the was to testify in Mr. Soto-Rodriguez's case. So it is exactly what happened here, that he may have had an incentive to give testimony that was contrary to what Mr. Soto-Rodriguez believed the truth to be. And Mr. Soto-Rodriguez's case does present a sufficient example that the Petitioner need only point to one case under Nicanor Romero. And under Nicanor Romero and Duane S. Alvarez, the Petitioner can point to the facts of his own case to satisfy that burden of a realistic probability. Opposing counsel's argument is that this is waived. Your Honor, I don't believe it was waived because it was presented at the IJ and that he has been pro se all the way through, that he did present in his best language, and that can be seen on pages 200 and 201 of the record, that he explained that he wanted him, that he told him to be honest, to tell the truth, and that in ignorance, he didn't know it was going to get him in trouble. That is, he didn't know it was illegal to ask someone to change their testimony or tell the truth or contact a witness in any way. And that kind of mistake of fact, it shows the fact that a person can be convicted of innocent intent, which the only time, returning to crime involving moral turpitude analysis, the only time which this Court has found knowledge sufficient to be a supportive finding of evil intent is when there is knowledge that someone is knowingly breaking the law, as was the case in Marmolejo Campos. And here, there is no requirement that a jury find that someone knew they were breaking the law when they decided to write a letter or say three words out loud when they were being arrested. All of these cases together demonstrate there is a realistic probability that the Washington statute is broader than the Federal definition of a crime involving moral turpitude. Thank you, Your Honors.  Thank you very much for your argument. I'd like to say on behalf of the panel, we're not consulted on this point, but I'm sure they agree with me. Very nice arguments from a law student. Nice argument from the government, too, but you do this for a living. You're just getting started. Very nice job. Thank you. Thank you. The case of Soto-Rodriguez v. Holder is now submitted for decision, and that completes our argument for this morning. Thank you.
judges: Davis, Fletcher, Christen